May it please the Court, I am Matt Adams with Northwest Immigrant Rights Project for Petitioner Noe Salazar-Frayre. I think if you look at us, the camera will probably pick you up as looking at Judge Biden. Great. Thank you for that. Okay. I seek to reserve one minute for rebuttal. Okay. We'll try to help you keep track. Thank you. In this case, the government does not even challenge the fact that Petitioner was unlawfully removed from this country. Rather, a respondent urges this Court to find that despite the unlawful nature of the underlying proceeding, Mr. Salazar is now without any legal recourse to attack that unlawful order. This case involves two consolidated petitions for review, both of which provide independent bases for Mr. Salazar to attack the unlawful order. In the first petition, it simply attacks the validity of the reinstatement notice. The second petition of the Board's decision affords Petitioner his only opportunity to seek the relief for which he was entitled to apply when he first appeared before the immigration judge. The immigration judge, the same judge who ordered him removed, acknowledged that when Mr. Salazar appeared before him in 1999, that he was unlawfully denied the opportunity to apply for relief and that the immigration judge felt it was his responsibility to form him with a relief for which he was eligible. For this reason, his removal order was unlawful. Consequently, the immigration judge agreed to the extraordinary remedy of rescinding that unlawful order and reopening the case to the respondent on his own motion. Now, as I understand it, what the district, what the IJ initially did was, with Mr. Salazar before him pro se, the IJ simply made a mistake of law, or at least so the IJ now thinks, and now says, I'd like to fix it. Exactly. And the Board overturned the immigration judge's decision on the sole basis that it found that the immigration judge did not have authority to reopen proceedings pursuant to the Board's own decision in matter of GMC. But this decision is in error for several reasons. First of all, matter of GMC recognizes, as does a long line of cases from the Board and from this Court, that a person who has been removed or deported, and even a person who is unlawfully reentered, has an opportunity to reopen those proceedings if they're able to demonstrate that the original removal resulted in a gross miscarriage of justice. The Board's own decision in matter of GMC makes clear that a person, quote, may collaterally attack a final order of exclusion or deportation in a subsequent proceeding only upon a showing that the prior order resulted in a gross miscarriage of justice, unquote. However, in matter of GMC, the Board found that the record did not reveal a miscarriage of justice. This is very distinct from the instant case where the immigration judge himself has recognized the petitioner was deprived of his only opportunity to apply for lawful permanent residence status to remain here in the United States with his U.S. citizen family. And there's something I don't understand, and it's not so much about this case, although it may have some impact on this case. It's just a general proposition. I'll ask you, and then the government may also be able to help me. Why do we have the concept of reinstating an order of removal? That is to say, as I understand it, he gets an order of removal that's entered. He's removed pursuant to the order of removal. Then some of the does the order disappear? That is to say, when he comes back in, the order why is why does it have to be reinstated? Why is it simply not there as it was before? Because under the law, an order that has been executed is now a final order. And prior to the changes of law in IHRA, IHRA, there was a predecessor reinstatement provision, 242F, which was much more limited. And in that reinstatement, the predecessor scheme, the individual still had the opportunity to appear before an immigration judge and was not denied the opportunity to seek relief, as they are now denied under the new reinstatement scheme as implemented by CFR 241.8. So does that mean that every time somebody leaves this country pursuant to a removal order, the removal order automatically dissolves because he has been removed? Not so much dissolves as it's been given effect. It's been executed. I see. It's been executed, and therefore the person who's been convicted of a crime completes their sentence. However, now under the new reinstatement scheme, the government is afforded the opportunity to use that same removal order, show that a removal has already been given effect, and go ahead and issue a not – they're not deported pursuant to that old order, but rather a reinstatement order is then issued. What would happen if Mr. Salazar were removed pursuant to this now-reinstated order? Now, that reinstated order, I guess, would then have been executed at such time as he is removed. Let's say he then comes back in again. Would the – would the removal order have to be reinstated again? Yes, there's persons who have prior removal or deportation orders reinstated on several occasions. I think I have it, and I'll ask the government sort of the same set of questions with a variation. In this case, Petitioner alleges not only is that reinstatement order invalid, but also the order of the BIA denying his or overturning the immigration judge's order is invalid. Because, as noted, the case law from the Board of Immigration and Appeals makes clear that where the removal was a result of – resulted in a gross miscarriage of justice, an immigration judge does have authority. And it's not just a matter of GNC. There's a long line of cases, a matter of Freenis, a matter of Mullen, a matter of Rahman. And as Petitioner submitted with his opening brief in his addendum, more cases that the Board continues to recognize its authority to reopen cases in this type of situation, even where persons have unlawfully reentered. Likewise, this Court has recognized that the bar to reopening should not be given effect even where a person has been deported if that prior deportation or removal order was unlawful. However, the government argues that those cases like Wietersburg v. INS, Estrada Rosales v. INS, do not apply to Petitioner because he unlawfully reentered the country. And they cite Hernandez-Almanza. Now, at least as I read our panel decision in Morales, and I'm not sure I can pronounce it properly, is Cairdo. If that panel decision were in effect and binding on us, I think you'd simply win. I agree. If Morales v. Cairdo, the en banc court, upheld the panel decision, it would be clear that the reinstatement decision is wrong. But we're arguing that regardless of what happens in Morales v. Cairdo, that that reinstatement order cannot be sustained. That's because prior to Morales v. Cairdo, this Court, in Areola v. Areola, made clear that Section 241.8 complies with due process as long as the underlying proceeding complied with due process. The Court in Areola made clear that Section 241a5 of the Act cannot preclude an individual from attacking the underlying order if that underlying order deprived that individual of due process. But your client lost the opportunity to contest the underlying order, didn't he? He did.  And that's like the person in Areola. In Areola. In our case he was. How was he deprived of judicial review? Because the immigration judge wrongly informed him that he was not eligible for any relief. He didn't tell him he couldn't appeal. No, but this Court has made very clear that when the immigration judge fails his responsibility to instruct an individual as to their eligibility for relief, that it renders meaningless and void any waiver of administrative or judicial appeal, that it's not an annoying and intelligent waiver. And this falls case by case. Counsel, who has the burden of raising the VAWA claim? Is that in the nature of an affirmative defense? Or is it something that the government has to explore on its own? Excuse me. Under both the case law of this circuit and the regulation, the immigration judge has the responsibility of raising the possibilities for relief. Under 8 CFR 1240.11, subsection A2, the immigration judge must instruct the individual of any opportunity for relief that he has. Likewise, this. Wait a minute. Counsel, let me stop you there. Excuse me. I've lost my voice. How is the IJ supposed to know that Mr. Salazar has got a possible VAWA claim? Because the immigration judge is supposed to have the responsibility, especially in dealing with pro se individuals, to carefully inquire as to the individual. In this case, there was even a more apparent form of relief. This individual had an approved I-130 filed by his mother, and that I-130 was the priority date was current, which means he was eligible to apply for a straight, old-fashioned adjustment of status. And yet the immigration judge did not advise him. As the immigration judge may note, the government attorney failed to inform him that there had been approved I-130 in the file, and the record of the portable alien on form I-213 did not contain that information. Counsel, your argument about the I-130 is different from your claim about VAWA, though, right? That's correct. He was eligible for multiple forms of relief. And my assertion is that the adjustment of status should have been readily apparent. And even as to the form of relief under VAWA, this Court has given careful instruction to immigration judges that when they're dealing with pro se litigants, that they have an important responsibility to scrupulously go over the facts and determine if an individual may be eligible for any form of relief. And so when an immigration judge inquires and discovers that a person has either lawful permanent resident or U.S. citizen parents or a spouse, it's inherent that the immigration judge has that responsibility of inquiring further to see if he's eligible for VAWA relief, which is now a very standard form of relief that thousands of immigrants each year receive. And so the immigration judge's failure to instruct our client, Mr. Salazar, of his eligibility for relief made it so that he did not make a knowing and intelligent waiver of his right to appeal. Rather, he waived his appeal based upon incorrect information. And as this Court has made clear, that renders meaningless his waiver. And under that theory, then, how long does he have to challenge it, and in what form should that challenge take? I'm now just asking your view on this point. So in this case, we petitioner has two independent forms. One is attacking the reinstatement notice. However, that doesn't obtain the ultimate relief that he seeks. All it shows is the government can't reinstate the prior unlawful order. Rather, he's filed a motion to reopen, or rather he requested the judge reopen sui sponte proceedings so that he could be placed in the same situation he was previously. I see. But the BIA has held, at least, that so long as the reinstatement of the removal order has taken place, the IJA doesn't have the power to do a sui sponte reopening. Well, the BIA did hold that, although even in matter of GNC they recognized that there was an exception where a gross miscarriage of justice had occurred. And also, matter of GNC did not involve a sui sponte motion to reopen. The regulations place strict limitations on an individual's right to file a motion to reopen, whereas a sui sponte reopening by the immigration court does not have those limitations. The regulation states that an immigration judge may, upon his or her own motion at any time, and the only restriction placed upon an immigration judge is if jurisdiction is already vested with the court. Are you saying, then, that the BIA has it wrong, that the IJA had no power to do a sui sponte reopening once the reinstatement order had been entered? I am. I'm saying that the immigration judge had the authority unless that authority had vested with the Board of Immigration Appeals. So there's two separate rules. Yeah, you've run over. Let's hear from the government, and we'll give you a little time for rebuttal. Thank you. When you're ready. May it please the Court, my name is Jennifer Lightbody, and I represent the Respondent. There are two separate cases here. One is the reinstatement, one is the reopening. With respect to the reinstatement case, one thing is that I would note, first of all, is that Petitioner keeps saying that the government has never taken a position with respect to whether the removal was unlawful or not. And I think it's important to note, at the time that both briefs were filed, the law of this circuit was governed by Morales, which said that, essentially, the Petitioner had to have a hearing before an immigration judge before his petition could be reinstated. So at the time that the briefs were filed, it was unlawful. However, this Court will be hearing from both sides with respect to the petition for rehearing, rehearing en banc in Morales, and Morales can't be cited. Now, for the proposition upon which the Court decided the case. Right. And so, given that, the government's position is that the reinstatement order was lawfully executed, and the underlying order was also lawfully executed. Now, why is the end? I understand why you would say the first. That is to say, if Morales is no longer on the books, which I think it is not until the en banc Court decides it, well, that means at least you have a perfectly sensible, arguable position that the reinstatement order is valid. I understand that. But you also said that because Morales is off the books, at least for now, that the original removal order is valid. Why does that follow? That is to say, that's a separate question as to whether or not he was entitled to relief, for example, under VAWA. Well, first of all, I would point out to the Court that also at the time that the briefs were written, Areola was the law of this Court, which says that you can challenge the underlying order for due process challenges on review. It never said anything about going back and challenging it in a reopening. And under the statute 1231a5, it specifically says that reinstated orders are not subject to reopening. I understand, but assume for the moment that it's not reinstated. Okay. I'm just asking, what if he had brought a timely position to the initial order of removal? Are you saying that it's valid or invalid, or are you saying you don't know? It's valid, Your Honor. The underlying order is valid for several reasons. That is to say, the district, the I.J. was right that he had no right for relief under VAWA? Well, the question is whether there was a constitutional violation. That's the only thing he can challenge. And I would assert, first of all, there were two bases upon which he says that it's valid with respect to reopening. And one is that he was the immigration judge didn't tell him he was eligible for cancellation of removal. Well, ultimately, the immigration judge on reopening denied him cancellation of removal because there was no exceptional and extremely unusual hardship. So we can't show prejudice by the immigration judge not advising him initially that he might be eligible for cancellation of removal. Initially, the immigration judge said, I don't think you're eligible for cancellation of removal because you have this conviction, and I don't think you can show good moral character. Now, ultimately, the immigration judge decided he was wrong about that, but still denied after reopening cancellation of removal on a separate ground. So he wasn't entitled to the relief, so he can't show any prejudice by what the immigration judge did initially with respect to cancellation of removal. So there is no due process violation. Secondly, with respect to whether he was eligible to adjust his status, the immigration judge had no idea that he had a visa petition approved. The petitioner never told him. He had no reason to ask. So it wasn't apparently eligible for that relief. Did the government lawyer know that he had a petition for readjustment of status? He didn't have an approved visa petition. I don't know whether the government attorney. Should the government attorney have known this? Your Honor, I don't know because I don't know how their system is set up. Why don't you know how their system is set up? I mean, this is you guys. Well, I would submit even if the government attorney was charged with knowing that, he still can't show prejudice because he could have adjusted his status once he was removed. In other words, he could have filed a petition to reenter the country and adjust his status, and he didn't do that. Can he now? Well, he would have to leave the country and then seek and outside of the country seek to adjust his status. Whether it would be granted or not, I don't know. Obviously, that would be up to the agency to decide. Well, would the order of removal prevent him from getting adjustment of status? Does that put him in a worse position than if he had no such order entered against him? Well, he was still subject to removal, and he's never challenged that because he entered without inspection. So he would still be subject to removal. Well, you know he's challenging it right now in this proceeding. You're saying he can't, but he's challenging it right now. Well, but he didn't seek to adjust it. All he had was an approved visa petition. He didn't have an application for adjustment of status when he appeared before the immigration judge. So even if he were presumably otherwise eligible, he didn't file for adjustment of status. So somehow it just seems to me as though the system has misfired here. That is to say, he had some arguments. Because he was pro se, he didn't make, and the government didn't alert the IJ to them, and he gets an order of removal. He now comes back in and he challenges the reinstatement, I have to say, late. At least it looks to me as though it's late. And you're saying, you know, all these, this is sort of, you know, tick, tick, tick, all these trap doors have closed or maybe they've opened and you've fallen through them. Too bad. You're gone. Well, I mean, one of the issues here, Your Honor, is that he is seeking this in a reopening. And under Areola, he had a right to seek that. Assuming, let's go at it this way. Assuming for the moment that, in fact, had he been properly legally advised, either by a lawyer that he hired, which he did not have at the initial time, or by the government as to the, you know, here you have this petition for readjustment of status, or by the IJ, let's assume that had he been properly advised in that initial proceeding, he could have achieved a readjustment of status. Let's assume that. Okay. Is there any way that he can get back to that position to get the relief to which he was originally entitled and he didn't get because nobody told him he was eligible for it? He could, with respect to the adjustment of status, he could, if he's outside of the United States, he could seek to get permission to reenter and adjust his status. And is he in a worse position in seeking that readjustment of status because he has been removed under an order of removal? I think it may make it more difficult because he has to go through a couple of separate hoops. He has to, first of all, go to the consulate and seek to get admission and then also present himself at the border. So he has to go through different steps than he would if he was in the United States. Those sound like mechanical difficulties. Is he legally in a worse position in terms of getting his readjustment of status order? I would say no, Your Honor, because for me. No, I want you to answer carefully because he may be depending on the answer you're now giving. Well.  Well, what I'm saying is that it would be up to the agency to decide if he can adjust, if he leaves the country and if he tries to apply to come back to adjusted status. It's still up to the agency to decide that issue, and I'm not making any representation. I'm asking you a very specific question, and I want you to think carefully before you answer it. And if your answer is I don't know, okay, I mean, that's an answer. If he leaves the country, as you are now suggesting, and from Mexico, which is where I assume he would go were he to leave the country, he applies for readjustment of status based upon, for example, the citizenship of his mother. Is he in a worse position in that application as a matter of law, not as a matter of inconvenience, but as a matter of law because of the existence of the order of removal? Well, the answer is I don't know, Your Honor, because I think there was an issue with respect to his age because I think he's over 21 now, so I'm not quite sure if he can adjust his status. So I don't, I'm going to say I don't know. So in other words, in other words, and again, I don't want to lean on you unfairly. I just want to make sure that we understand each other. You're suggesting then to him, well, you can go outside and apply for readjustment of status. As far as you know, that may be illusory. It may be, but at the time that he was initially removed, he could have sought adjustment of status. Well, I understand that, but the time he was initially removed, we have the problem that he is pro se. The government lawyer is not advising him of any rights that he has. D.I.J. is not advising him of any rights that he has. But, yes, I understand. Back then, I mean, that was the problem. Had he been properly advised by somebody, we wouldn't be here. Well, he didn't, he also didn't bring this information to the forefront, knowing he had a group. No, that's the premise of what I'm saying. Let me ask you another question, if you don't mind my holding you over, and that is it's the same question I'd ask the other counsel, and that is just to understand this vocabulary of orders of removal and then reinstatement of orders of removal. I gather that what happens is once an order of removal is entered and someone is then removed from the country pursuant to that order, the order has been, I guess, executed and is when somebody comes back in again, it has to be reinstated? Correct. So now this order, assuming the reinstatement is valid, has been reinstated against him? Yes. What happens if he's now removed pursuant to this reinstated order? He then comes back into the country and the order, I guess, the same order, the original order, is going to be reinstated a second time? Yes. What if he brings a challenge to that now reinstated order, reinstated for the second time, in a timely fashion within 30 days? What's open in that challenge? So he's challenging the first reinstatement order? No. He's challenging the original removal order as he's trying to do now, that is to say he's, you know, he was reinstated. He's late, I have to say. I mean, I don't buy the tolling arguments. I think he is just plain old late in attacking that reinstatement order. If he were timely in challenging that reinstatement order, I think he could probably get at the validity of the underlying order. Is that right? Well, I think actually he's waived any challenge to that because, first of all, he only challenged it on grounds of moralis, which is, of course, subject to rehearing. He never alleged as far as the underlying order. Never alleged where, when? He never alleged in his opening brief. He keeps saying it violated due process, but he doesn't say how it violated due process. Instead what he says is he says let's go back to the we've challenged the due process issues in the reopening. We're not challenging them in the restatement. So he's waived any argument with respect to that in reinstatement. And under Areola Areola, he needed to challenge that in reinstatement, not reopening. Because 1231A5 says that they can't, that the reinstated order of removal is not subject to reopening. What he's trying to do is get this court to extend Areola Areola not only to challenge due process challenges on review, but he's also getting, asking the court to expand that to reopening before the agency. And I would assert to this court that that would be wrong because, number one, it encourages aliens to illegally reenter and seek to reopen and start a dual process between challenging, making constitutional challenges under Areola Areola in a reinstatement challenging the underlying order, and then also seeking to challenge it, which is exactly what he's doing here, before the agency. Therefore, not only duplicating resources, but possibly coming to contrary conclusions between the agency and this court. And this court You're now substantially over. I'm sorry. No, it's not your fault. You were responding to our questions. Thank you. Thank you very much. May I ask a question? Oh, I'm sorry. Judge Hanson has a question. As long as Judge Hanson or Judge Vibey has questions, we'll keep you here for however that may turn out to be. Okay. I believe I heard Mr. Adams argue this morning that the failure to take the appeal from the first removal should be excused because the failure to appeal was not a knowing and voluntary waiver of the right to appeal because of the underlying due process violation. That's what I think I heard. Do you have an answer to that argument? Well, again, I would assert that he shouldn't be challenging that in reopening. He should have been challenging that in the reinstatement aspect of the case. He's asking the court to extend Areola Areola and bring this before the agency when it should be in front of this court. But originally, this court said it should be in 2241, and the Real ID Act changes that. But I would also assert the position that he was asked if he wanted to appeal, and he said no. He was also asked if he wanted counsel, and he said no. So the immigration judge did engage in a dialogue with the petitioner at his original hearing with respect to the case. That's the same original proceeding in which the I.J. said, listen, I'm going to be frank with you, you've got a loser. He said it in longer words, but that's what he said. To the petitioner? To the petitioner. Well, but there was nothing else before the immigration judge to know. I mean, he didn't have to ask him whether he was an abused child. I mean, they admitted that. I understand. But this is the I.J. who says, listen, you've got a loser. You can appeal if you want, but you've got a loser. Well, he still had, of course, the right to appeal. And, you know, ultimately he did find that he wasn't eligible for cancellation of removal. I'm sorry, Judge Hanson, I interrupted. I have a second question. My second question is this. I understand from the facts that he is both a victim and a perpetrator of domestic violence. Am I correct? I believe that's correct, yes. Now, what effect does the conviction for domestic violence have on his ability to adjust his status? I believe that the immigration judge found that he could still adjust his status, but denied him cancellation of removal. Thank you. Judge Bybee, I want to make sure I don't cut off any questions. No, I think my questions have been answered. Thank you. Okay, thank you. Let's start out with a minute for rebuttal and see where we are.  The government errs in saying that he was not granted cancellation of removal. Administrative record, page 102, shows that he was granted cancellation of removal under section 248B-2. That error is based on the fact that there were two separate types of cancellation, one for VAWA and one under the normal 10 years. He was not granted the one under the normal 10 years that had the higher standard. And that's important because VAWA cancellation could not be applied from outside of the country, only before the immigration judge. Moreover, the government also is incorrect in saying that he could apply for adjustment outside. Under section 212AC-9, he is ineligible, permanently ineligible, to apply for a visa once he's been deported and attempted to reenter the country. Only after 10 years can he even apply for a waiver. And so there is extreme prejudice in him being removed without ever having an opportunity to apply for adjustment. Also, the government errors in saying that he never alleged due process. In the opening brief, he did rely on Morales-Escuero because that was the law at the time. But even in the opening brief on page 17, footnote 2, he notes that under AREOLA-AREOLA, the underlying order must as well comply with due process. And as we noted, we're attacking not only the reinstatement notice, but the board's decision to deny the motion to reopen because that's the only vehicle which allows him an opportunity to seek the relief that he was entitled to apply for, lawful permanent residence in this country. And one final note on the, if I may, on the timeliness. It is true that the notice of reinstatement was dated December. His petition for review was not filed until June 19. But he never received a copy of that notice. And under the regulation at 241.8b, the service must provide written notice. And this Court found in Martinez-Serrano that where the government does not comply with their own regulation, that the person will not be penalized and that the time period does not run until they're provided a copy of that notice in Martinez-Serrano. So we would argue that the petition for review of the first order, of the reinstatement order, is timely filed under this Court's decision in Martinez-Serrano. Okay. Thank you. Now, could I ask the government counsel to approach the podium? And both of you be there at the same time for a moment. As you probably know, and both of you know, we have a mediation service associated with this. And I also am quite aware that it's unusual to have a successful settlement of an immigration case when they reach this stage. But they do happen from time to time. Would you object to taking this case to mediation? Would either of you object? We don't object to taking this case to mediation. If there's an opportunity for a respondent to have a resolution that follows. Would the government object? May I ask a question? If we can't resolve it, then the case would be then submitted to the court for a decision? If it cannot be resolved through mediation, it comes back to us and we decide what we decide. That's correct. Going to mediation does not foreclose any right that you have to come here for your decision. I mean, mediation is mediation. It's not arbitration. And what exactly? So I'm clear what the boundaries are that we would be mediating. Well, this is a fancy way of asking you, would you guys try and settle this case? We have a mediation service that helps reach settlements and is sometimes successful in so doing. But this is not – if you agree to go to mediation, it is not an agreement to waive any rights that either side might have. And if there's a failure in mediation, the panel finds out nothing as to what happened in mediation except that a successful resolution was not achieved. We would agree to go to mediation, Your Honor. Okay. We'll prepare an order to that effect. And I repeat that if the mediation is not successful, you're back in precisely the position you are in front of us today. Okay. Thank you. Thank you. The case of Salazar Flair is now, I'll say submitted for decision, but it's submitted for decision subject to our filing an order that probably will withdraw submission pending whatever might happen in mediation. Thank you.
judges: Hansen, W. Fletcher, Bybee